IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:13-CV-199-FL

| | |
|---|---|
| NANNETTE F. BUCKNER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JACOB J. LEW, Secretary, ) <br> Department of the Treasury, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **MEMORANDUM & RECOMMENDATION** |

This matter is before the court on Plaintiff's motion for summary judgment [DE #77] [1] and Defendant's motion for summary judgment [DE #78] pursuant to Rule 56 of the Federal Rules of Civil Procedure. Both parties filed responses in opposition. Defendant replied to Plaintiff's response and provided additional response to Plaintiff's motion for partial summary judgment. Plaintiff was allowed to supplement her motion with additional evidence on October 29, 2014, and January 16, 2015. The time for further filings has expired. Where this matter has been referred to the undersigned and the parties have not consented to the jurisdiction of the magistrate judge, the parties' motions are undertaken pursuant to 28 U.S.C. § 636(b)(1)(B) for memorandum and recommendation. For the reasons stated below, it is recommended that Defendant's motion be denied and that Plaintiff's motion be denied.

---

[1] Although denominated as a motion for partial summary judgment, it appears Plaintiff is moving for summary judgment on all outstanding claims.

## BACKGROUND

Nannette Buckner ("Buckner" or "Plaintiff") was formerly employed with the Internal Revenue Service ("IRS") as a Revenue Officer (GS-12).[2] In or around April 2008, Buckner applied for a promotion to Revenue Officer (GS-13). Determined to be one of four "best qualified" candidates, Buckner was interviewed but was ultimately not selected for the position. In July 2008, Buckner filed a complaint of discrimination with the United States Department of Treasury ("Agency"), asserting that she was denied the promotion because of her age, gender and disability.[3] Thereafter, Buckner added allegations of reprisal and harassment/hostile work environment. The Agency completed its investigation in March 2009. On Buckner's request, a hearing was held before an Administrative Judge with the Equal Employment Opportunity Commission ("EEOC") over a period of three days in February and April 2010. On January 5, 2011, the Administrative Judge issued his decision, determining that Buckner had "fail[ed] to establish that she was subjected to unlawful discrimination based on age, sex, harassment/hostile work environment, or in reprisal for her EEO activity."[4] (See Admin. J. Decision, attached as Ex. to Pl.'s Compl. [DE #1-4] at 14.) The Agency issued its final order adopting the

---

[2] Buckner retired on December 31, 2010, with thirty-six years of federal service.

[3] Although it is not entirely clear, it appears as though Plaintiff's disability claim was based on vision impairment and was premised upon allegations that she was not allowed to have personal belongings, including reading glasses, when completing the written examination portion of the job interview.

[4] Prior to the Administrative Judge's decision, Buckner withdrew her claim of disability discrimination. (See Admin. J. Decision at 2 n.2; EEOC Decision at 1 n.1.)

2

Administrative Judge's findings. Buckner appealed the Agency's final order and, on December 19, 2012, the EEOC issued a decision affirming the Agency's final order. (*See* EEOC Decision, attached as Ex. to Pl.'s Compl. [DE #1-12].)

On March 19, 2013, Plaintiff, proceeding *pro se*, instituted this action against the Agency and three Agency officials alleging, *inter alia*, violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act ("ADEA"). Defendants moved to dismiss Plaintiff's complaint, and on March 20, 2014, the court granted the motion in part and denied it in part. Specifically, the court denied Defendants' motion to dismiss Plaintiff's ADEA claim and Title VII retaliation claim against the Agency and dismissed Plaintiff's remaining claims.

The parties have each moved for summary judgment on Plaintiff's claims for age discrimination and retaliation.

## DISCUSSION

I.  Standard of Review

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial,'"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Summary judgment is not a vehicle for the court to resolve disputed factual issues. *Faircloth v. United States*, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. *Anderson*, 477 U.S. at 249.

In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Id.* at 247-48. Accordingly, the court must examine "both the *materiality* and the *genuineness* of the alleged fact issues" in ruling on this motion. *Faircloth*, 837 F. Supp. at 125.

II.  Age Discrimination Claim

Plaintiff's age discrimination claim is governed by § 15 of the ADEA, which provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). Absent direct evidence of age discrimination, courts in the Fourth Circuit apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Under this framework, the plaintiff bears the burden of establishing a prima facie case of discrimination based on disparate treatment. *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728 (4th Cir. 1996). To make out a prima facie case of age discrimination with respect to a hiring or

4

promotion decision, a plaintiff must demonstrate (1) that she is a member of the protected class (*i.e.* that she is at least forty years of age); (2) that she applied for an open position; (3) that she was qualified for the position but was not selected; and (4) the position remained open or was filled by a similarly qualified candidate who is substantially younger than the plaintiff. *Laber*, 438 F.3d at 430.

If a prima facie case is established, then an inference of discrimination arises, and the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. The employer's burden is one of production, not of persuasion. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274-75 (4th Cir. 1995). Therefore, the employer is not required to prove the absence of discriminatory motive. *Id.* "The plaintiff must then bear the burden of persuasion and show by a preponderance of the evidence that the defendant's explanations are pretextual or otherwise unworthy of credence." *Id.* at 275. It is not enough for the plaintiff to merely prove the falsity of the employer's explanations; the plaintiff must also prove her case of intentional discrimination. *Reeves v. Sanderson Plumbing Prods.*, 53 U.S. 133, 147 (2000). However, it is permissible to infer the ultimate fact of discrimination from the falsity of the employer's explanation. *Id.*

Plaintiff has established a prima facie case of age discrimination. She is over the age of forty, she applied for a promotion to Revenue Officer (GS-13), and Defendant does not dispute that she was one of four applicants considered "best qualified" for the position. While the age difference of nine years may weaken the

inference of discrimination, it does not require that summary judgment be entered in Defendant's favor. *See Pilger v. D.M. Bowman, Inc.*, 833 F. Supp. 2d 489, 497 (D. Md. 2011) (noting gap of eight years could be considered "substantially younger"), *aff'd*, 521 F. App'x 307 (4th Cir. 2013) (affirming verdict for defendant following jury trial on ADEA claim); *see also Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 588 (6th Cir. 2002) (concluding that seven and one-half year difference raised question of material fact precluding summary judgment); *Kess v. Mun. Employees Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 648 (D. Md. 2004) ("It is not clear whether the age gap of eight years between the two employees is sufficient, in itself, to meet the 'substantially younger' standard."); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 328 (D. Md. 2003) (noting that an eleven-year gap is sufficient, but a five-year gap probably is not).

In support of the promotion decision, Defendant asserts as a legitimate, nondiscriminatory reason that Mastriaco was ultimately considered a better candidate than Plaintiff because of her enthusiasm and willingness to go above and beyond her expected duties. Defendant states: (1) that the interview panel was limited to asking three questions; Buckner's interview was described as "excellent" and Mastriaco's interview was described as "overall very good" and "outstanding" [DE #1-22, Fandre Test. at 84-87, 98]; (2) that while Plaintiff and Mastriaco both gave the most technically proficient answers during the interview process, Mastriaco's "willingness to go above and beyond her normal expected duties" separated her from Plaintiff [DE #1-22 Ray Test. at 208-211]; and (3) Mastriaco and "at least a couple of

6

interviewees, did an excellent job on answering technical questions and [did] a very good job on the case study" but Mastriaco's enthusiasm made her stand out [DE #1-22 Johnson Test. at 30-31].

Because Defendant has articulated a legitimate, nondiscriminatory reason for not promoting Plaintiff, the burden shifts to Plaintiff to provide evidence creating a genuine issue of material fact as to whether Defendant's explanation is a pretext for intentional age discrimination. Plaintiff asserts that Defendant's reasons are merely pretext as evidenced by the terms used to describe Mastriaco's interview, the fact that information was missing from Mastriaco's application, the Territory Manager's failure to clear Mastriaco's promotion with her superior, Robert Hunt, and the fact that Plaintiff was more qualified than Mastriaco.

First, Plaintiff maintains that the use of words such as "energy," "high energy," "enthusiasm," "contagious," ambitious," and "Outstanding!" are illustrative of age discrimination during the hiring process. However, Plaintiff has not presented evidence to support the inference that the comments about Mastriaco were motivated by intent to discriminate based on age or were connected to the decision not to promote Plaintiff. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1992) (stating comments that an employer needed to "attract newer, younger people" and "young blood" are not probative of age discrimination or discriminatory purpose); *Merrick v. Farmers Ins. Corp.*, 892 F.2d 1434, 1438-39 (9th Cir. 1990) (stating that a decision maker's statement that he hired a "'bright, intelligent, knowledgeable young man'" instead of plaintiff was insufficient to raise a triable issue regarding pretext);

7

*Papa v. Union Carbide Corp.*, 971 F. Supp. 220, 227-28 (S.D. W. Va. 1997) (finding that comments such as "bright young scientist," "productive young scientist," and "enterprising young scientist" were mere commentary that the person hired was young).

Next, Plaintiff asserts that she is more qualified than Mastriaco. A plaintiff may prove pretext by showing she is "better qualified" and "by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons for the decision to pass her over for the promotion. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006). Absent evidence of discriminating intent, the court will "leave to the employer's discretion the method of evaluating an employee's job performance." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997), *abrogated on other grounds by Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134 (4th Cir. 2007).

The parties here do not dispute that Plaintiff had over thirty-three years with the IRS. (Compl. at 4 [DE #1]; Answer at 3 [DE #42].) Mastriaco had less than seven years' experience with the IRS. (Mastriaco's Personnel Actions Report, Ex. 18 at 246-58 [DE #1-20]). Plaintiff had been employed at a GS-12 level for two years and 4 months (Buckner's Application, Ex. 18 at 200, 202 [DE #1-20]), whereas Mastriaco has been at the GS-12 level for one year and three months (Mastriaco's Application, Ex. 18 at 244, 246 [DE #1-20]). Plaintiff had also acquired an Associate degree, while Mastriaco had only a high school diploma. (Buckner's Application, Ex. 18 at 202, [DE #1-20]; Mastriaco's Application, Ex. 18 at 246 [DE #1-20].) Plaintiff additionally notes

8

the difference in the interview answers given by Plaintiff and Mastriaco, as well as Mastriaco's omission of work history from 2001 to 2006 in her application. (Compl. at 5 [DE #1]; Answer at 4 [DE #42].) The selection officer, Fandre, was aware that the information was missing but testified that "there was nothing for her to do" because both Plaintiff and Mastriaco were determined to be "best qualified" and ranked "outstanding" based on their applications. (H'rg Tr., Ex. 20 at 83 [DE #1-22].) However, the selection officer also indicated that past experience was "critical" to the promotion decision. (H'rg Tr,, Ex.20 at 75 [DE #1-22].)

In the summary recommendations made by the interview panel, the panel reviewed Plaintiff, stating:

> [She] had an excellent interview. She answered all questions thoroughly and correctly, with confidence. [She] exhibited desire to do thorough, complete casework, and to do it right the first time. She has a wealth of experience having worked in a number of different areas for IRS. She spoke from experience.

(Revenue Officer GS-13 Summary Recommendation, Ex. 18 at 196 [DE #1-20].) Concerning Mastriaco's interview, the panel stated:

> Overall very good interview. Clear, concise, confident, ambitious, eager. High energy and appeared to answer questions with what appears to be based on experience rather than text book. Passionate and engaging! Outstanding! V-Good job on the case study! Addressed all issues except – stamp & coin collection, could expand. Presentation very professional.

(Revenue Officer GS-13 Summary Recommendation, Ex. 18 at 197 [DE #1-20].) Both Plaintiff and Mastriaco were recommended for selection by the panel. (Revenue Officer GS-13 Summary Recommendation, Ex. 18 at 196; Revenue Officer GS-13 Summary Recommendation, Ex. 18 at 197.) However, the panel also noted that

Mastriaco's answer to a question concerning levy banks and stock was "shaky – Part 2 incorrect – Q2 re: LLC." (Mastriaco's Interview Answer/Comment Sheet, Ex. 1 at 15 [DE #1-3].)

Defendant also argues that "Mastriaco possessed a dynamism during that phase of the examination that separated two qualified candidates." (Def.'s Resp. Pl's Mot. Partial Summ. J. at 15 [DE # 85].) Defendant additionally notes that Plaintiff's age and birthday were not included on her application for determination of the candidates which were the "best qualified." (Def.'s Mem. Supp. Mot. Summ. J. at 16 [DE #79].) Though Plaintiff's evidence of age discrimination may not be particularly strong, viewing the evidence in the light most favorable to Plaintiff, it is sufficient to create a genuine issue of material fact as to whether Plaintiff was demonstrably more qualified than Mastriaco.

### III. Retaliation

Plaintiff additionally claims that her employer retaliated against her for filing a complaint with the EEOC. An employer may not retaliate "against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in [a covered] investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under either the ADEA or Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) a "materially adverse" employment action was taken against her; and (3) there was a causal connection between the protected activity and the adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*. 548 U.S. 53, 68 (2006); *see also Laber v.*

*Harvey,* 438 F.3d 404, 432 (4th Cir. 2006). In order for an employer's actions to be "materially adverse," the actions must be such that they would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" and cannot be merely "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68. "If the plaintiff establishes a prima facie case, we then apply the remainder of the *McDonnell Douglas* test – whether the employer has produced a legitimate, non-discriminatory reason for the [adverse action] and, if so, whether the employee can show that the reason is false, and, ultimately, that the employer retaliated against him." *Laber,* 438 F.3d at 432.

Plaintiff claims that Defendant retaliated against her in the following ways:

1. Plaintiff's manager attempted to dissuade her from pursuing her EEO complaint by telling Plaintiff that she might "win the battle, [but] would lose the war" and that he "would hate to see the quality of [her] work suffer due to spending time and energy on an EEO complaint." (Compl. at 6.)

2. Plaintiff received a negative quality review, which was retracted after Plaintiff challenged it.

3. Plaintiff was assigned a larger caseload than coworkers at the same grade level.

4. Plaintiff was removed from a case without notice immediately prior to a scheduled meeting with a taxpayer and the taxpayer's attorney.

5. Plaintiff's manager refused to approve work submitted by Plaintiff and raised his voice at her.

6. Defendant Hunt repeatedly attempted to meet with Plaintiff to discuss the promotion decision that formed the basis of Plaintiff's EEO complaint;

7. Management refused to excuse Plaintiff from a Town Hall meeting called by Hunt just days before Plaintiff's EEOC hearing, notwithstanding that Hunt was named as a discriminating official in Plaintiff's EEO complaint. (Compl. 6-7.)

11

It is not disputed that Plaintiff engaged in protected activities when she filed her discrimination complaint in July 2008. However, the parties do dispute whether Plaintiff has presented sufficient evidence to support a finding that materially adverse employment action was taken against Plaintiff. In his brief supporting Defendant's summary judgment motion, Defendant addresses separately each of the incidents of alleged retaliation and argues that none of these incidents rises to the level of materially adverse employment action.

Upon consideration of Defendant's motion to dismiss Plaintiff's retaliation claim, the court previously rejected Defendant's argument that the incidents must be viewed in isolation. Instead, the court held that the actions alleged in Plaintiff's complaint, *when considered together*, may constitute a "materially adverse" employment action for purposes of a Title VII retaliation claim. (Order [DE #40] at 11.)

As to these allegations, the record includes the following evidence:

1. Plaintiff testified at the EEO hearing that her manager, Dingus, made comments about his concern that her work would slip because of her EEO complaint. (Hr'g Tr., Ex. 20 at 684-87 [DE #1-22].) At the same hearing, Dingus stated he did not remember making such statements. (H'rg Tr., Ex. 20 at 309-11 [DE #1-22].)

2. Plaintiff stated in sworn testimony at the EEO hearing and in her deposition that she received a negative quality review, which was retracted after Plaintiff challenged it. (H'rg Tr. at 687-89 [DE #1-22]; Pl.'s Dep. Tr. at 164-72 [DE #78-1].) Dingus testified at the hearing that he did not remember the specific

12

incident, but there were approximately three evaluations he had to change around the same time period. (H'rg Tr. at 313-14 [DE #1-22].) He said that Plaintiff's review could have been one of those, but he was not certain. (*Id.*)

  3. Plaintiff presented evidence that she was assigned a larger caseload in July 2007 and November 2008 than co-workers at the GS-12 level. The record shows that in July 2008 Plaintiff was carrying a caseload of 50, which was more than Plaintiff's co-workers at the GS-12 level for the same time period. (Pl's Mot. Supp. Evidence, Updated Inventory Level Data, July 7, 2008 at 8-9 [DE #95-2].) In November 2008, Plaintiff was assigned 54 cases, which exceeded the maximum caseload for a GS-12. (Group Data Sheets November 22, 2008, Ex. 18 at 135 [DE 1-20]; Fandre's H'rg Testimony, Ex. 20 at 131-34 [DE #1-22].) Plaintiff asked for help due to the stress of the workload. (*Id.* at 127.) Fandre testified that she directed Dingus to intervene on Plaintiff's behalf (*id.* at 127-28), but Dingus testified that he was never instructed to take any action to assist Plaintiff (Dingus H'rg Testimony, Ex. 20 at 320-22 [DE #1-22]).

  4. Plaintiff has also produced evidence that Dingus removed her from a case directly before a meeting with a taxpayer and the taxpayer's attorney. (DuPalevich's H'rg Testimony, Ex. 20 at 219-21 [DE #1-22].)

  5. Plaintiff provided sworn testimony that her manager, Dingus, refused to approve her work on May 28, 2008, and demanded that she request notes and work papers from a taxpayer's attorney. Plaintiff testified that Dingus raised his voice and walked toward her when she explained that doing so would violate the law. (Pl's H'rg

13

Testimony, Ex. 20 at 668-70 [DE #1-22].) At the EEO hearing, Dingus acknowledged that requesting such information may not be permissible "because it may violate the client-attorney privilege" but did not recall asking Plaintiff to get any work papers from an attorney. (Dingus's H'rg Testimony, Ex. 20 at 306-08 [DE #1-22].)

6. Hunt was interviewed for the EEO investigation on June 12 and 13, 2008, and would have been aware of the EEO complaint before the June 23, 2008, meeting at which he requested to meet with Plaintiff multiple times. (EEO Counseling Report, Ex. 18 at 40 [DE #1-20].) Moreover, Hunt scheduled a meeting at Plaintiff's place of work days before the EEOC hearing was to occur (Df.'s Admissions at 27 [DE #49-3].), and Plaintiff was told she would be required to attend the meeting (Email, Ex. 23 at 33 [DE #1-24]).

The evidence presented is such that a reasonable jury could find a "materially adverse" employment action. While not dispositive of the issue, the evidence presented with respect to the alleged retaliatory acts, when considered together, creates a genuine issue of material fact as to whether a reasonable worker would have been dissuaded from making or supporting a charge of discrimination. *See, e.g., Burlington*, 548 U.S. at 71 (stating that "[r]etaliatory work assignments [are] a classic and widely recognized example of forbidden retaliation") (internal quotation marks omitted). Given the proximity between Plaintiff's EEO activity and the alleged retaliatory acts, it cannot be said, as a matter of law, that the actions were not causally related to Plaintiff's protected activities. Furthermore, Defendant has not proffered a legitimate, non-discriminatory reason for the alleged retaliatory acts.

14

Because a genuine issue of material fact exists, neither of the parties is entitled to summary judgment on Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's motion for summary judgment [DE #78] be DENIED and that Plaintiff's motion for summary judgment [DE #77] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until August 17, 2015, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from

15

Case 5:13-cv-00199-FL   Document 105   Filed 07/31/15   Page 15 of 16

appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 31st day of July 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge